## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                          )
**JEFFREY WILLIAMS,**                     )
                                          )
         **Plaintiff,**                   )
                                          )
         **v.**                           )     **Civil Action No. 12-10313-DJC**
                                          )
**MASSACHUSETTS COLLEGE OF**              )
**PHARMACY AND ALLIED HEALTH**            )
**SCIENCES, et al.,**                     )
                                          )
         **Defendants.**                  )
_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                              March 31, 2013

## I.      Introduction

Plaintiff Jeffrey Williams ("Williams") has sued the Massachusetts College of Pharmacy and Allied Health Services ("College"), employees and board members of the College and the College's legal counsel (collectively "Defendants") primarily over the College's treatment of Williams when he was enrolled in and after he was dismissed from the College's Master of Physical Assistant Studies program. Defendants have brought four motions to dismiss, the scope of which are explained in more detail below, for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and failure to plead concisely as required by Fed. R. Civ. P. 8(a). Williams has also "request[ed]" summary judgment in his favor. D. 41. For the reasons given below, the Court GRANTS in part and DENIES in part the Defendants' motions to dismiss and DENIES Williams's request for summary judgment.

II.     **Factual Background**

The Court assumes all well pled facts alleged in Williams's Second Amended Complaint ("SAC"), D. 14, as true and draws all factual inferences in Williams's favor for the purposes of resolving this motion to dismiss.  Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

A.     **Facts Primarily Related to the Discrimination Claims**

Williams in 2008 was a student at the College enrolled in its Masters of Physical Assistant Studies program ("MPAS program").   ¶¶ 26, 36-38.   Williams has a learning disability.[1]  ¶¶ 34, 39-42.

In September 2008, the dean of the MPAS program, Defendant Scott Massey ("Massey") warned Williams that he had to maintain a semester grade point average ("GPA") of "3.6" to progress in the MPAS program.   ¶ 30; D. 14 at 1.  On December 12, 2008, Williams took a final examination where the College was supposed to allocate additional time to him to complete the examination due to his disability but did not do so.   ¶ 34.  By December 14, 2008, Williams's GPA fell below a "3.0," which was the level that the College required of its students to progress into the "clinical year" of the MPAS program.   ¶¶ 36-41.  On December 14, 2008, Williams was "academically dismissed from the College."  ¶ 36.

Williams appealed the decision of the Academic Standing Committee and requested grade changes and permission to repeat certain courses.   ¶¶ 39-44.   The College's provost,

---

[1] Williams's reference to a disability is not explained in the SAC, D. 14, but in his opposition to the College's motion to dismiss, Williams writes, "Plaintiff complied with the College's requirements in that:  a licensed psychiatrist had diagnosed Plaintiff with Attention Deficit Disorder (ADD), a known and well-studied learning disability, and said psychologist [sic] did comply with college requirements verifying stated diagnosis; . . . [the College] is in possession of medical documentation supporting Plaintiff['s] diagnosis of a learning disability [and] knew, and verified Plaintiff's learning disability . . . ."  D. 40 at 17-18.

Defendant Michelle Kalis ("Kalis"), denied these requests in January 2009.  ¶¶ 44, 47.  Williams filed a complaint with the College's Dean of Students, Defendant Jean Joyce-Brady ("Joyce-Brady") on January 19, 2009, alleging gender discrimination based on the fact that two female students in similar academic circumstances had been permitted to re-enter the program but that he had not.  ¶¶ 48-49.  On February 26, 2009, Kalis provisionally readmitted Williams into the MPAS program, citing Williams's "late request for special circumstances allowed for the learning disabled" but imposing what Williams describes as "infinitely more onerous" minimum GPA and class scheduling conditions than had been given to "female students who were not disabled."  D. 40 at 18; ¶¶ 49-52.  Williams accepted reenrollment but ultimately did not meet the GPA conditions and on August 19, 2009, he was "dismissed with prejudice" from the College.  ¶ 58.

On September 21, 2009, Williams filed a complaint alleging discrimination "on the bases of age and sex" with the Department of Education's Office for Civil Rights ("OCR").  ¶¶ 63-64.  As part of the OCR proceeding, Defendant Keturah Martin, an attorney employed for Defendant law firm Jackson Lewis LLP, counsel for the College, sent a document to the OCR with a "statement by Jackson Lewis LLP which stated 'Please find enclosed as Exhibit C a copy of the Complainant's transcript as of February 17, 2010' and referenced with a footnote (1) which states 'Note that the current, accurate version of the Complainant's transcript is enclosed.  This transcript shows a slightly lower GPA than found on earlier versions, due to the correction of an earlier computation error providing grade substitution that was not permitted under the College's policies."  ¶ 66.

## B.    Facts Primarily Related to Other Claims

### 1.    False Imprisonment

In October 2008, while Williams was a student at the College, one of his instructors, Defendant Thomas Moreau ("Moreau") and Massey summoned Williams into a meeting under the pretense of discussing his fellow students' abuse of an anonymous peer grading system in one of the classes.  ¶ 31.  Instead of discussing that topic, Moreau berated Williams for twenty minutes and Williams suffered an anxiety attack during the course of the meeting.  Id.  On August 5, 2009, Moreau detained the entire student body against their will in a room for more than forty-five minutes to garner confessions of academic dishonesty.  ¶¶ 55, 108.  Several students ran from the room crying on their way to see Massey, who ended the episode.  ¶ 108.

### 2.    Defamation

On January 9, 2009, an unidentified faculty member of the College placed a "8x11 photo" of Williams in the College's security office.  ¶ 45.  The photograph was in plain view of any passerby.  Id.  The unidentified faculty member also instructed the security officer to be vigilant, "warning as to the dangerous character of [Williams]."  Id.  Several former classmates and other individuals known to Williams saw the photograph in the security office and "began to raise questions" as to why Williams's "picture was hanging underneath the window of the security office."  Id.  Williams suffered "great damage" to his reputation and the episode resulted in "numerous malicious rumors and phone calls."  Id.

## III.   Procedural History

On November 9, 2011, Williams, proceeding pro se, filed his complaint in the Southern District of Texas.  D. 1.  On February 1, 2012, Williams filed his first amended complaint, naming a number of College employees and trustees as Defendants, D. 11, and then filed the

SAC a few days later on February 9, 2012, amending his allegations, D. 14.  The College moved to change venue to this District and that motion was granted on February 16, 2012 and the case was transferred to this Court.  D. 25.

Williams, still pro se, alleges twelve counts in the SAC.  In addition to naming the College as a Defendant, he asserts claims against Massey, Kalis, Joyce-Brady, Jay Bikofsky ("Bikosfsky"), Charles F. Monahan Jr. ("Monahan"), George E. Humphrey ("Humphrey"), Thomas Moreau ("Moreau"), and Susan E. White ("White") (collectively, "Affiliates") who are all sued in their current or previous capacities as College administrators, professors or board members.  D. 14 at 1.  Williams also sues law firm Jackson Lewis LLP and its attorneys Joan Ackerstein and Keturah Martin (collectively, "Counsel") who represented the College before the OCR.  ¶¶ 65-66; 83-87.  Williams also sues certain unidentified individuals as John Does 1-10 (collectively, "Does").  ¶ 18.

Against all Defendants, Williams alleges a violation of Title IX citing unlawful discrimination based on gender, 20 U.S.C. § 1681 ("Count 1"), fraud ("Count 6"), defamation per quod ("Count 8"), tortious breach of the implied covenant of good faith and fair dealing ("Count 10") and intentional infliction of emotional distress ("Count 11").  Against the College and the Affiliates, Williams alleges a violation of § 504 of the Rehabilitation Act ("Count 2"), negligence ("Count 3"), a violation of due process ("Count 5"), false imprisonment ("Count 7"), negligent failure to protect ("Count 9-1")[2] and civil conspiracy with intent to defraud ("Count 9-2").  Against Counsel, Williams asserts a claim for legal misconduct ("Count 4").  He seeks damages and injunctive and equitable relief.

---

[2] The SAC alleges two counts labeled "Count 9."

The Defendants have separately moved to dismiss.  D. 29, 31, 34.  The Affiliates initially had only moved to dismiss some claims against them and supplemented their motion filing with a second motion to dismiss, D. 52, to address the remaining claims asserted against them.[3]  The College has moved to dismiss all claims except for Count 1 (violation of Title IX).  The remaining Defendants have moved to dismiss all claims against them.  In one of his filings opposing summary judgment, Williams also cursorily "requests summary judgment" in his favor against the Affiliates, D. 41, which the Affiliates oppose, D. 43 at 1.

## IV.   Discussion

### A.   Standard of Review

In deciding a motion to dismiss, the Court determines if the well-pled facts alleged "plausibly narrate a claim for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012).  On the plaintiff's view of the facts, the Court should be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

The Court is also "solicitous of the obstacles that pro se litigants face, and while such litigants are not exempt from procedural rules, [the Court] hold[s] pro se pleadings to less demanding standards than those drafted by lawyers and endeavor[s], within reasonable limits, to guard against the loss of pro se claims due to technical defects."  Dutil v. Murphy, 550 F.3d 154,

---

[3] Given the structure and scope of the SAC, the Affiliates may have been confused about whether Williams's use of the acronym "MCPHS" in the SAC was meant to refer only to the College or to the College and Affiliates.  Such potential confusion explains the Affiliates' second motion to dismiss and the Court addresses all of the pending motions to dismiss, which do not overlap, in this Memorandum and Order.

158-59 (1st Cir. 2008) (citing Boivin v. Black, 225 F.3d 36, 43 (1st Cir. 2000)).  "[O]ur task is not to decide whether [Williams] ultimately will prevail but, rather, whether he is entitled to undertake discovery in furtherance of the pleaded claim." Rodi v. S. New England Sch. of Law, 389 F.3d 5, 13 (1st Cir. 2004).  "Our judicial system zealously guards the attempts of pro se litigants on their own behalf.  We are required to construe liberally a pro se complaint and [dismissal is warranted] only if a plaintiff cannot prove any set of facts entitling him or her to relief." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

### B. Claims Asserted Against the Five Affiliates Against Whom Williams Does Not Claim Wrongdoing

Williams names five Affiliates, Bikofsky, Monahan, Humphrey, Joyce-Brady, and White, D. 35 at 4, against whom he does not plausibly allege any wrongdoing.[4]  Because the SAC does not plausible state any claim against these individuals, the Court dismisses all claims against these Defendants.  See, e.g., Berkowitz v. Lockheed Martin Corp., No. 07-12379-NG, 2008 U.S. Dist. LEXIS 54069, at *4-5 (D. Mass. July 17, 2008) (dismissing claims against individual defendants where the plaintiff did not plausibly allege their participation in wrongdoing).  For the remainder of this opinion, all references to Affiliates shall exclude these individuals.

### C. Claims Asserted Against All Defendants

*1.     Count 1:  Violation of Title IX: Unlawful Discrimination Based on Gender*

Count 1 alleges a claim against all Defendants for unlawful gender discrimination under Title IX, 20 U.S.C. § 1681.  SAC ¶¶ 67-72.  Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or

---

[4] Williams acknowledges this deficiency in his opposition, D. 41 at 6, and attempts to addresses this issue by describing the alleged wrongdoing by these individuals in that filing.  However, even those allegations do not indicate a plausible factual basis for allowing the claims against these individuals to go forward.

be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. "The statute's enforcement mechanism includes an implied private right of action but this private right of action extends only to claims against the educational institution itself." Rinsky v. Trs. of Bos. Univ., No. 10-10779-NG, 2010 U.S. Dist. LEXIS 136876, at *37 (D. Mass. Dec. 27, 2010) (citing Lipsett v. Univ. of P.R., 864 F.2d 881, 901 (1st Cir. 1988)) (internal citation omitted).

Here, the Affiliates and Counsel have moved to dismiss Count 1, D. 32 at 6; D. 35 at 5, but the College has not, D. 30 at 3. Because a Title IX claim can only be asserted against an educational institution,[5] see, e.g., Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 65 (1st. Cir. 2002) (holding that "the plaintiffs' Title IX claim perforce fails as to all the individual defendants"), the Count dismisses Count 1 as alleged against the Affiliates, Counsel and Does. Count 1, however, stands as alleged against the College.

> 2.    *Count 6: Fraud*

Count 6 alleges that all Defendants committed fraud by "knowingly and willfully making false statements and adulterating evidence in connection with [Williams's complaint to the OCR]." D. 14 ¶ 102. It is not clear to the Court whether damage resulting from a third-party's reliance on a fraudulent misrepresentation is cognizable under Massachusetts law. See Gorbey v. Am. Journal of Obstetrics & Gynecology, 849 F. Supp. 2d 162, 166 (D. Mass. 2012) (observing that "[p]laintiffs here do not allege that they relied or acted upon any alleged misrepresentation but rather that third parties so relied and acted which, in turn, resulted in plaintiffs' injury. Plaintiffs point to no case, however, and the Court has found none, in support of a theory that third-party reliance on fraud is cognizable under Massachusetts law").

---

[5] Williams recognizes this requirement and requests to withdraw Count 1 as alleged against Counsel and Affiliates. D. 39 at 10; D. 41 at 17.

But there is a threshold issue that more decidedly resolves this claim. Here, the statements were allegedly made to OCR investigators leading up to, or in, a proceeding before the OCR. D. 14 ¶¶ 28-29, 47, 51, 102-105. The College and Affiliates moved to dismiss on the basis that this "claim is barred by the absolute privilege applicable to statements made . . . in the course of judicial or quasi-judicial proceedings." D. 30 at 9. As the court in <u>Fisher v. Lint</u>, 69 Mass. App. Ct. 360, 366 (2007) observed:

> Statements made in the course of a judicial proceeding that pertain to that proceeding are absolutely privileged and cannot be used to support a civil liability even if the statements were uttered with malice or in bad faith. An absolute privilege is favored because any final judgment may depend largely on the testimony of the party or witness, and full disclosure, in the interests of justice, should not be hampered by fear of an action for defamation. It is more important that witnesses be free from the fear of civil liability for what they say than that a person who has been defamed by their testimony have a remedy. The privilege extends to circumstances where the statements are made preliminary to a proposed or contemplated judicial proceeding as long as they bear some relation to the proceeding.

<u>Fisher</u>, 69 Mass. App. Ct. at 366 (internal citations and quotation marks omitted). As <u>Fisher</u> held, an absolute privilege applies to proceedings that are "sufficiently judicial or quasi judicial in nature [so as to warrant] an absolute privilege." <u>Id.</u>

Courts to have considered this issue have found that investigatory and adjudicative proceedings before specialized civil rights administrative bodies are quasi-judicial. <u>See, e.g.</u>, <u>Visnick v. Caulfield</u>, 73 Mass. App. Ct. 809, 812 (2009) (noting that "statements by a party, counsel or witness in the institution of, or during the course of, a judicial proceeding are absolutely privileged provided such statements relate to that proceeding [and that it is] apparent that proceedings before the EEOC are sufficiently judicial in nature for application of the privilege"); <u>see also</u> <u>R.K. v. Plaintiffs, Y.A.L.E. Schs., Inc.</u>, No. 07-5918, 2009 U.S. Dist. LEXIS 34070, at *14-15 (D.N.J. Apr. 20, 2009) (holding that "Defendants' statements to the OCR in

response to the investigation of Plaintiffs' civil rights complaint were likewise absolutely privileged"); Booth v. Total Health Care, Inc., 880 F. Supp. 414, 415-16 (D. Md. 1994) (explaining that statements made to investigator from civil rights commission are "absolutely privileged" from defamation claims); Tillamook Country Smoker, Inc. v. Woods, 732 F. Supp. 1091, 1093-94 (D. Or. 1990) (according absolute privilege for letters sent to Office of Civil Rights Compliance of the Small Business Administration accusing a company of sex discrimination).

Consistent with these cases, the Court finds that statements made to the OCR investigators in response to Williams's complaint before the OCR were protected by absolute privilege. Cf. Fisher, 63 Mass. App. Ct. at 369 (holding that "[b]ecause the absolute privilege would protect not only [the Defendant's] testimony at the quasi judicial trial board but also his statements that were made preliminary to the proceeding, [the Defendant] was entitled to the immunity the privilege provides") The Court dismisses this claim as to all Defendants.

### 3. Count 8: Defamation

Count 8 alleges defamation.[6] D. 14 ¶¶ 112-118. "To prevail on a defamation claim, a plaintiff must 'establish that the defendants published a false statement about him to a third party that either caused him economic loss or was of the type that is actionable without proof of economic loss." Driscoll v. Bd. of Trs. of Milton Acad., 70 Mass. App. Ct. 285, 295-296 (2007) (quoting Phelan v. May Dept. Stores Co., 443 Mass. 52, 55-56 (2004)). "A false statement that would tend to hold the plaintiff up to scorn, hatred, ridicule or contempt, in the minds of any

---

[6] Although Williams pleads his claim as defamation per quod, Massachusetts has "abolished the distinction between per se and per quod defamation." Simas v. First Citizens' Fed. Credit Union, 63 F. Supp. 2d 110, 116 (D. Mass. 1999) (citing Sharratt v. Hous. Innovations, Inc., 365 Mass. 141, 147 (1974)).

considerable and respectable segment in the community would be considered defamatory."
Phelan, 443 Mass. at 56 (internal quotation omitted).

Under Massachusetts defamation law, "[s]tatements of fact may be actionable, but 'pure opinions' are not." Driscoll, 70 Mass. App. Ct. at 296 (citing King v. Globe Newspaper Co., 400 Mass. 705, 709 (1987)). "In drawing the distinction, we focus on whether the assertion can be proved false. Opinions are usually based on far more subjective judgments than ordinary facts. 'An assertion that cannot be proved false cannot be held libellous.'" Driscoll, 70 Mass. App. Ct. at 196 n.10. "However, '[a] statement cast in the form of an opinion may imply the existence of undisclosed defamatory facts on which the opinion purports to be based, and thus may be actionable.'" Id. (citing King, 400 Mass. at 297).

As Williams points out in his opposition to the Affiliates' motion to dismiss, D. 40 at 35, "[i]n construing Massachusetts law, several courts have held that conduct may constitute a statement for purposes of a defamation claim." Krolikowski v. Univ. of Mass. Mem. Med. Ctr., No. 00-11947-PBS, 2002 U.S. Dist. LEXIS 8984, at *2 (D. Mass. May 16, 2002) (collecting cases); see also Jorgensen v. Mass. Port Auth., 905 F.2d 515, 520 (1st Cir. 1990) (holding that for purposes of a defamation claim, "a communication [is] defined as conduct that brings an idea to the perception of others").

Williams identifies four events that have damaged Williams's reputation: (1) intentionally falsifying [Williams's] transcript, (2) "the accusation that [Williams] could use his walking stick to cause great bodily harm to other students,"[7] (3) discriminatorily dismissing Williams twice from the MPAS program, and (4) placing Williams's picture in the security

---

[7] Williams does not explain this allegation further in the SAC.

office.  D. 14 ¶ 114.  Williams alleges that he has suffered numerous damages.  Id.  The Court considers whether Williams has stated a defamation claim as to each of these events.

First, the accusation of falsification of Williams transcript is made with respect to the communication made to the OCR.  D. 14 ¶¶ 114, 117.  As such, these communications were privileged, as discussed above.  "To rule otherwise would make the privilege valueless if an individual would then be subject to liability under a different theory."  Doe v. Nutter, McClennan & Fish, 41 Mass. App. Ct. 137, 141 (1996).

Second, the allegation about the walking stick is not actionable, where even assuming it was "published . . . to a third party" it is alleged as a statement of opinion.  It cannot be read as "imply[ing] the existence of undisclosed defamatory facts" where the allegation does not imply that, for example, Williams had caused great bodily harm in the past.  Noting that "whether a statement is a factual assertion or an opinion is a question of law if the statement unambiguously constitutes either," King, 400 Mass. at 708, the Court concludes that this statement as alleged states an opinion and is not actionable, even were Williams to amend his complaint to allege publication.

Third, although the dismissals of Williams from the MPAS program were not statements, they could perhaps have conveyed defamatory information if published.  See Petsch–Schmid v. Bos. Edison Co., 914 F. Supp. 697, 706 (D. Mass. 1996) (holding that where a supervisor raised his voice to an employee while escorting her out of the building following a suspension, "it is possible that the escort may have been conducted in such a manner as to communicate a defamatory statement to other employees about the plaintiff").  However, it is not clear what falsity Williams alleges was being conveyed.  Where Williams has asked for leave to amend to

satisfy the pleading requirements, D. 40 at 37, the Court will allow Williams to do so as to this claim limited to facts alleging the false statement and its publication.

Fourth, the publication of Williams's photograph in the College's security office could be considered a statement, and even if it was a statement of opinion, it could be an seen to "imply the existence of undisclosed defamatory facts on which the opinion purports to be based." Although the College and Affiliates argue that Massachusetts recognizes a qualified privilege to publish defamatory statements "where the publisher and the recipient have a common interest, and the communication is of a kind reasonable calculated to protect or further it," Bratt v. Int'l Bus. Machines Corp., 392 Mass. 508, 513 n.8 (1984) (quoting Sheehan v. Tobin, 326 Mass. 185, 190-191 (1950)), here Williams alleges that the "photograph was in plain view of any passerby" and was seen by other individuals who were not security staff members, who (depending on the facts) may not have had a "common interest" with the publisher of that statement.  D. 14 ¶ 45. Williams alleges that this publication caused great damage to his reputation.  D. 14 ¶ 45.  Again, here it is not clear what falsity Williams alleges was being conveyed and Williams shall be allowed to amend his complaint in this regard.

The Court dismisses this Count as to Counsel and the Affiliates, who are not alleged to have made any defamatory statement outside of their communication with OCR, which as explained above, was privileged.

4.   *Count 10:  Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing*

Count 10 alleges in its entirety that "[College and Affiliates] failed to use the due care of a reasonably prudent person, and that required by administrative and common law standards, to ensure a fair and reasonable opportunity for Plaintiff to complete his program of study."  D. 14 ¶ 129.  The Court agrees with the College and Affiliates that this claim "sounds like a claim of

negligence," D. 30 at 15, and to the extent that is so, the Court folds the analysis of this Count into its analysis of Count 3 stating a claim for negligence, discussed below.

To the extent that Williams is attempting to plead a breach of the implied covenant of good faith and fair dealing that is present in every contract, his pleading is insufficient. Where Williams alleges no contract with any of the Affiliates, Counsel or Does or the College, and where none could reasonably be inferred from his pleading, this Court dismisses Count 10, against all Defendants.[8]

### 5.    Count 11:  Intentional Infliction of Emotional Distress

Count 11 alleges that Defendants intentionally inflicted emotional distress on Williams. D. 14 ¶¶ 130-35.   Under Massachusetts's law, to state a claim for intentional infliction of emotional distress the claimant must allege "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it."  Limone v. United States, 579 F.3d 79, 94 (1st Cir. 2009) (quoting Agis v. Howard Johnson, Co., 371 Mass. 140, 144-45 (1976)).

---

[8] As with the other Defendants, Williams has not identified the specific contract and "fruits of the contract" with the College from which this claim could arise.  See Anthony's Pier Four, Inc. v. HBC Assoc., 411 Mass. 451, 471-72 (1991).  As to the College, the Court also notes that  the weight of the law appears to be against such a finding solely based on alleged violation of academic policies.  See Sullivan v. Bos. Architectural Center, Inc., 57 Mass. App. Ct. 771, 774-75 (2003) (student unable to establish breach of contract implied covenant where she claimed policies for academic probation were not followed).

Here, the only allegations against Counsel concern actions before the OCR and do not state an actionable claim for intentional infliction of emotional distress for the same reasons of privilege as explained above.  As to the remaining Defendants, Williams has not alleged conduct that is so "severe and of a nature that no reasonable man could be expected to endure it."  <u>Agis</u>, 371 Mass. at 144-145.  The Court finds that the allegations here, even accepted as true, do not reach that high threshold.  "Out of the human condition may arise a myriad of emotional responses including anger, sadness, anxiety, and distress, many of which are attributable to the conduct of others.  While perhaps blameworthy, such conduct is often not legally compensable."  <u>Quinn v. Walsh</u>, 49 Mass. App. Ct. 696, 706 (2000).  The Court dismisses this Count as to all Defendants.

### D.      Claims Asserted Against the College and the Affiliates

> *1.      Count 2:    Violation of § 504 of the Rehabilitation Act: Unlawful Discrimination Against a Disabled Student*

Count 2 alleges a violation of § 504 of the Rehabilitation Act, 29 U.S.C. § 794.  D. 14 ¶¶ 73-78.  "To state a claim under § 504, a plaintiff must prove:  (1) he is a 'handicapped person' under the Rehabilitation Act; (2) he is 'otherwise qualified' for the program; (3) he is excluded from benefits solely because of his handicap; and (4) the program or special service receives federal funding."  <u>Schroeder v. Triton Reg'l Sch. Dist.</u>, No. 07-10367-PBS, 2007 U.S. Dist. LEXIS 100119, at *19 (D. Mass. Dec. 18, 2007).  The College moved to dismiss because Williams fails to allege that he is a "handicapped person."  D. 30 at 5.  Williams's opposition to the College's motion to dismiss, D. 40 at 17-18, states sufficient facts such that Williams should be allowed to amend his claim as to the College to meet the plausible pleading requirement.  <u>See</u> n.1, <u>supra</u>.

The Rehabilitation Act is "limited to claims of disability discrimination with regard to 'any program or activity receiving Federal financial assistance.' 29 U.S.C. § 794(a). While 'the First Circuit Court of Appeals and the Supreme Court have yet to decide the issue of individual liability[,] . . . the majority of circuits that have confronted this issue [have held] that no personal liability can attach to agents and supervisors under . . . the Rehabilitation Act.' Castro Ortiz v. Fajardo, 133 F. Supp. 2d 143, 150-51 (D.P.R. 2001) (citing cases)." Mitchell v. Mass. Dept. of Correction, 190 F. Supp. 2d 204, 213 (D. Mass. 2002) (adopted report and recommendation). Here, the Court agrees with the weight of authority and finds that there is no evidence that the Affiliates are a "program or special service receiv[ing] federal funding" and the Count against them must be dismissed.

### 2.   Count 3:  Negligence

Count 3 alleges negligence. D. 14 ¶¶ 79-82. The Defendants argue that this claim should be dismissed where Massachusetts does not recognize a heightened duty of colleges to their students. D. 30 at 7-8; D. 52 at 4. It appears that Williams alleges a breach of the ordinary duty of care, in addition to any heightened duty. D. 14 ¶ 81 ("[College and Affiliates] failed to use the due care of a reasonably prudent person . . ."). However, Williams does not plausibly allege how any duty of reasonable care was breached or how the breach caused him harm. The Court will dismiss this Count without prejudice.

### 3.   Count 5:  Violation of Due Process

Count 5 is captioned as "violation of due process," but contains factual allegations mostly related to Williams's discrimination claims. D. 14 ¶¶ 88-99. Williams then alleges that "[College and Affiliates] failed to use due care of a reasonably prudent person [by violating Williams's] constitutional, statutory, and student rights." ¶ 100. To the extent that Williams in

this claim asserts negligence, the Court folds the analysis of this Count into its analysis of Count 3 stating a claim for negligence, discussed above.   To the extent that he seeks to press a constitutional due process violation, the Massachusetts and Federal Constitutions protect only against state action; they do not reach private conduct "no matter how unfair that conduct may be."  NCAA v. Tarkanian, 488 U.S. 179, 191 (1988).  Williams does not identify any statutory or other legal basis giving him a cognizable claim to a due process violation.  The Court, therefore, dismisses this claim.

### 4.    *Count 7:  False Imprisonment*

Count 7 alleges that Moreau falsely imprisoned Williams on two occasions.  D. 14 ¶ 108.  As such, this claim is dismissed as to other Defendants.  The tort of false imprisonment consists of "the (1) intentional and (2) unlawful (3) confinement of a person, (4) directly or indirectly (5) of which the person confined is conscious or is harmed by such confinement."  Noel v. Town of Plymouth, Mass., 895 F. Supp. 346, 354 (D. Mass. 1995).  "Any restraint, even without physical contact, is sufficient to constitute false imprisonment.  'If a [person] is restrained by fear of a personal difficulty, that amounts to false imprisonment within the legal meaning of such term.'"  Ball v. Wal-Mart, Inc., 102 F. Supp. 2d 44, 55 (D. Mass. 2000) (quoting Coblyn v. Kennedy's Inc., 359 Mass. 319, 321 (1971)).  Here, Moreau moves to dismiss on the basis that Williams "does not allege that he was 'confined' sufficiently to state a claim for false imprisonment."  D. 30 at 11.  However, in Williams's opposition to the motion to dismiss, he states facts that if properly alleged could plausibly state the element of confinement, and he requests the opportunity to amend to correct the pleading deficiency.  D. 40 at 29-31.  The Court will allow amendment as to this claim against Moreau.

     5.      *Count 9-1:  Negligent Failure to Protect*

Count 9-1 alleges that the College and Affiliates failed to train and discipline Massey after it learned of his discriminatory practices.  D. 14 ¶¶ 120-121.  To the extent that this claim sounds in negligence, <u>see</u> D. 14 ¶ 120 (alleging that the College and Affiliates "failed to use the due care of a reasonably prudent person . . .") the Court folds the analysis of this Count into its analysis of Count 3 stating a claim for negligence, discussed above.  The Court has not found any case suggesting that there is a separate claim apart from negligence for "failure to protect" or that it necessarily extends to non-physical harm.  In at least one case, it appears that a university employer may have been held potentially liable (i.e., a motion to dismiss was not granted) under a general theory of negligence, for non-physical harm.  <u>Rinsky v. Trustees of Bos. Univ.</u>, No. 10-10779-NG, 2010 U.S. Dist. LEXIS 136876, at *32 (D. Mass. Dec. 27, 2010) (denying motion to dismiss where "as defendants note, an employer does not always have the capacity to <u>remedy harassment</u> by a third-party, Rinsky's BU supervisors clearly did here.  They had the duty and power to ensure their students were not endangered at their internship.  A reasonably prudent school supervisor would not knowingly continue to assign her student to a program where she would be <u>harassed</u> and assaulted") (emphasis added).  While the Court dismisses this claim as a separate cause of action apart from negligence, the Court is not prepared to say that the types of actions here, properly alleged in a claim for negligence, would fail to state a claim.  The Court already has noted that it will allow Williams to re-allege a claim for negligence.

     6.      *Count 9-2:  Civil Conspiracy with Intent to Defraud*

Count 9-2 is captioned as a claim of civil conspiracy with intent to defraud. Massachusetts law recognizes coercive conspiracy (also sometimes called "true conspiracy") and "concerted action" conspiracy.  D. 10 ¶¶ 267-82; <u>Shirokov v. Dunlap, et al.</u>, No. 10–12043–

GAO, 2012 WL 1065578, at *25-26 (D. Mass. Mar. 27, 2012) (quoting <u>Mass. Laborers' Health</u>

<u>& Welfare Fund v. Philip Morris, Inc.</u>, 62 F. Supp. 2d 236, 244 (D. Mass. 1999)):

> In brief, the distinction between the two versions is this:  For "true conspiracy" the
> plaintiff must prove that concerted action gave the defendants a "peculiar power of
> coercion" over the plaintiff enabling them to bring about results that are different in
> kind from what any of them could achieve individually.  The exercise of this
> "peculiar power of coercion" is itself the wrong, and no other tortious act need be
> shown.  In contrast, the "concerted action" version extends liability to those who
> assist or encourage others to commit torts without necessarily any proof either of a
> "peculiar power of coercion" or even of an explicit agreement among the defendants.
> Of course, there can be no joint liability for a tort unless there has been a tort, so the
> "concerted action" version depends on proof of underlying tortious conduct for
> which liability can be assigned.

<u>Mass. Laborers' Health & Welfare Fund</u>, 62 F. Supp. 2d at 244.  Williams alleges neither form

of conspiracy, and the Court, drawing every reasonable inference in favor of Williams, does not

see how Williams's allegations could be plausibly re-pleaded to support either form.  This claim

is dismissed against all Defendants.

### E.    Claim Asserted Only Against Counsel: Count 4, Legal Misconduct

Count 4, a claim for legal misconduct, is the only claim asserted only against Counsel.

D. 14 ¶¶ 83-87.  Williams requests to withdraw Count 4 in his opposition to Counsel's motion to

dismiss.  D. 39 at 11.  For that reason, and additionally because all of the allegations of legal

misconduct arise from Counsel's representation of the College before the OCR, which is subject

to the absolute privilege discussed above, the Court dismisses this Count.

### F.    Defendants' Motion to Dismiss Based on a "Failure to Plead Concisely"

The Defendants move to dismiss based on Williams's failure to plead concisely the SAC.

Although verbose and deficient in the respects discussed above, Williams, proceeding <u>pro se</u>, has

done a passable job of pleading his causes of action.  <u>See</u> <u>Boivin</u>, 225 F.3d at 43 (explaining that

"courts hold pro se pleadings to less demanding standards than those drafted by lawyers").  The

Court finds that Williams's complaint is sufficiently concise to proceed, especially in light of this Court's ruling that reduces the number of claims remaining. Accordingly, the Court denies Defendants' motions to dismiss based on alleged non-compliance with Fed. R. Civ. P. 8(a).

### G.   Williams's Request for Summary Judgment and Request for Remedies

Williams has cursorily requested a ruling of summary judgment in his favor. D. 41 at 1, 4. That request is denied, where the burden is on Williams to demonstrate that there is no genuine dispute of material fact entitling Williams to judgment as a matter of law, Fed. R. Civ. P. 56(b), and where Williams has not made that showing.

## V.   Conclusion

For the reasons given above, the Court GRANTS in part and DENIES in part the Defendants' motions to dismiss, D. 29, 31, 34, 52, as follows:

The Court DISMISSES all claims against Defendants Bikofsky, Monahan, Humphrey, Joyce-Brady, and White, and DISMISSES all claims against Counsel. The Court DISMISSES Counts 4, 5, 6, 9-1, 9-2, 10 and 11; DISMISSES except as to the College Counts 1 and 2; DISMISSES Count 7 except as to Moreau; DISMISSES Count 8 except as to the College and the Does. The Court dismisses the aforementioned parties and counts with prejudice.

The Court DISMISSES Count 3 without prejudice.

The Court ALLOWS Williams to amend the SAC within 28 days of the date of this Order only as follows: Williams may amend to add factual allegations as to his disability in relation to his Rehabilitation Act claim, Count 2; the required elements of false imprisonment against Moreau, Count 7; the publication of a false statement related to the defamation claim, Count 8; and he may re-plead a negligence claim, Count 3. The amended pleading may only contain these claims and not any of the claims that the Court has now otherwise dismissed with prejudice in

this Order, and it must otherwise be in compliance with the Federal Rules of Civil Procedure and the Local Rules.  The Court DENIES Defendants' motions to dismiss based on Fed. R. Civ. P. 8(a), and DENIES Williams's request for summary judgment contained in D. 41.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge